UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami-Dade Division

**OFRA COSMETICS, LLC**, a Florida
limited liability company,

       CASE NO. 0:21-cv-60027

     Plaintiffs,

vs.

**AYELET FAERMAN**,

     Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

**OFRA COSMETICS, LLC**, a Florida limited liability company, by and through its undersigned counsel, files this Complaint against defendant **AYELET FAERMAN**, to allege as follows:

### **JURISDICTION, VENUE, AND PARTIES**

1.     Plaintiff, **OFRA COSMETICS, LLC** ("OFRA" or "Plaintiff"), is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business in Pompano Beach, Broward County, State of Florida.

2.     Defendant, **AYELET FAERMAN** ("FAERMAN" or "Defendant"), is an individual and a resident of Broward County, State of Florida, over the age of 18 and is otherwise *sui juris*.

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises out of FAERMAN's violations of federal law. Specifically, OFRA asserts causes of action under the Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq*, and the Defend Trade Secrets Act, 18 U.S.C. §1836, *et seq*.

4.      Moreover, this Court has subject matter jurisdiction over the state law causes of action pursuant to 28 U.S.C. §1367 because they are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.      This Court has personal jurisdiction over Defendant because she is a resident of this judicial district.

6.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391(b) as a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## NATURE OF ACTION

7.      This action arises from FAERMAN's unlawful misappropriation of OFRA's valuable trade secrets and other confidential information the use of which can only benefit either Defendant, personally, or a direct competitor of OFRA who could unlawfully gain a competitive advantage in the marketplace. In addition to OFRA's claim for damages, OFRA seeks temporary and permanent injunctive relief.

8.      After leaving her employment at OFRA, FAERMAN utilized illicit and unlawful means to obtain data and other highly confidential information about OFRA's social marketing platform and branding strategy. This data is among the most valuable and confidential information from OFRA's sales organization, which would give an unfair competitive advantage to anyone trying to compete with OFRA for cosmetic sales, or could be used gain access to OFRA's customer base and social media influencers, a platform in which OFRA has invested millions of dollars to cultivate and develop.

9.     Among other things, FAERMAN (and a potential new employer) can use OFRA's confidential information to strategically target OFRA's existing and prospective customers and partners without having had to invest their own time and money in market research and analysis, customer relationship development, and curation of product offering. Furthermore, FAERMAN's possession of documents and knowledge regarding OFRA's global cosmetics business strategies provides a roadmap she can leverage to isolate her efforts on specific geographic markets and products that OFRA has already vetted as commercially valuable and viable.

10.     After learning that FAERMAN had unlawfully obtained access to OFRA's database maintained on Highrise and accessed through the Highrise portal[1], OFRA attempted to resolve the matter through a "cease and desist" letter, but such efforts were unsuccessful insofar as FAERMAN refused to respond. Therefore, OFRA filed this lawsuit seeking, among other things, preliminary and permanent injunctive relief as well as damages against FAERMAN.

## FACTS COMMON TO ALL COUNTS

11.     On or about July 15, 2020, FAERMAN voluntarily terminated her employment with OFRA as its Operations Director and General Counsel. In the years during which she was employed by OFRA and prior to her voluntary separation from OFRA, she had access to and developed a comprehensive knowledge and understanding of OFRA's confidential and proprietary social media database on "Highrise" in which OFRA has invested millions of dollars and thousands of person-hours to develop.

---

[1] See the URL located at: https://launchpad.37signals.com/highrise/2196459/signin and/or http://ofracosmetics.highrisehq.com.

12.     Much of OFRA's business is derived from marketing through social media (including *Instagram*, *Twitter*, *Facebook* and *Pintrest*) in which agents, influencers, vendors and distributors have been successfully integrated into OFRA's branding.

13.     Among FAERMAN's duties as Operations Director, she held administrative access and participated in the management of OFRA's data and information, as well as OFRA's marketing efforts through these social media platforms. Following her separation from OFRA on or about July 15, 2020, FAERMAN's privileges to access OFRA's database on the Highrise platform were revoked. Thereafter, any post-separation access by her (or at her direction) was unauthorized by OFRA and for no legitimate purpose.

14.     Highrise affords OFRA the ability to monitor and record all e-mail correspondence and communication between OFRA and customers as well as its agents, influencers, vendors and distributors, in addition to recording all access credentials and location IP addresses.

15.     On December 29, 2020 at approximately 9:00 PM there occurred unauthorized access to OFRA's account through the Highrise access portal. OFRA was advised by Highrise that a "new device" login occurred using Shaina Sharaby's access credentials from IP address 139.138.92.203. (See Ex. "1").

16.     OFRA then determined that the IP address used to access Highrise with Shaina Sharaby's credentials matched the IP address from an order that FAERMAN placed on November 22, 2020 from her OFRA account for delivery to her current residential address. (See Ex. "2")

17.     The matching IP address is confirmed on the Highrise Access Log on December 29, 2020. The evidence is uncontroverted that FAERMAN unlawfully accessed OFRA's account in Highrise on December 29, 2020 using Shaina Sharaby's access credentials. (See Ex. "3").

## COUNT I
### Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836)
### (Injunctive Relief and Damages)

18.     OFRA realleges and incorporates by reference Paragraphs 1 through 17 as though fully set forth herein.

19.     The Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. §1836(b)(1), as amended.

20.     Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if, (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. §1839(3), as amended.

21.     Under the DTSA, "misappropriation" means "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was: (I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret

or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that (I) the trade secret was a trade secret and (II) knowledge of the trade secret had been acquired by accident or mistake." 18 U.S.C. §1839(5), as amended.

22.     Under the DTSA, "improper means" "(A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6) (as amended).

23.     FAERMAN surreptitiously misappropriated OFRA data containing OFRA's confidential and proprietary information by accessing and, upon information and belief, copying the data from OFRA's account on Highpoint. Upon information and belief, FAERMAN is unlawfully using and disclosing OFRA's trade secret information in her new employment, to competitors and/or to sabotage OFRA's successful marketing campaigns.

24.     The information contained in these documents constitute trade secrets related to a product or service used in, or intended for use in, interstate commerce.

25.     This information provides significant value to OFRA, and gives OFRA a competitive advantage in its industry.

26.     This information derives independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. If a competitor obtained this information, it could target OFRA's current and prospective customers and partners and, among other things, unfairly diminish OFRA's market share.

27.     FAERMAN knew she had a duty to maintain the secrecy of and return OFRA's trade secrets and confidential information. Importantly, FAERMAN also had no legitimate business reason to access OFRA's data on the Highrise platform after the end of her employment with OFRA on July 31, 2020.

28.     OFRA took reasonable steps to keep this information confidential. Access to the data FAERMAN misappropriated is tightly controlled by OFRA. Access is provided on a need-to-know basis and access to the Highrise platform is monitored and password-protected.

29.     In violation of the DTSA, FAERMAN has knowingly and improperly acquired and retained OFRA's confidential and propriety information and trade secrets. Upon information and belief, FAERMAN is improperly using OFRA's trade secret information to benefit herself, her employer and to OFRA's detriment.

30.     FAERMAN was not acting within the scope of her employment with OFRA when she misappropriated the Highrise data because her employment with OFRA ended on July 15, 2020.

31.     FAERMAN had no legitimate business reason for accessing the Highrise data because at the time she did so, he was no longer an employee of OFRA. Indeed, FAERMAN accessed the Highpoint portal for the sole purpose of misappropriating the confidential information contained therein.

32.     FAERMAN's actions constitute actual misappropriation in violation of the DTSA.

33.     FAERMAN's actions constitute a willful and malicious violation of the DTSA.

34.     As a result of FAERMAN's conduct, OFRA has suffered and will continue to suffer damages and irreparable harm, including without limitation, diminishing value of OFRA's trade

secret, confidential and confidential information, harm to OFRA's relationships with its customers by unfairly competing for the same customer base, and undermining OFRA's competitive edge.

35.   OFRA's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief.

36.   FAERMAN will continue to cause irreparable harm and damages to OFRA and its trade secrets and confidential information if not restrained.

### COUNT II
### Violation of Florida Uniform Trade Secrets Act (Fla. Stat. §§ 688.001, *et seq.*)
### (Injunctive Relief and Damages)

37.   OFRA realleges and incorporates by reference Paragraphs 1 through 17 as though fully set forth herein.

38.   FAERMAN surreptitiously misappropriated OFRA data containing OFRA's confidential and proprietary information by accessing and, upon information and belief, copying the data from OFRA's account on Highpoint. Upon information and belief, FAERMAN is unlawfully using and disclosing OFRA's trade secret information in her new employment, to competitors and/or to sabotage OFRA's successful marketing campaigns.

39.   OFRA's confidential and proprietary information contained in the Highpoint data constitutes "trade secrets" of OFRA within the meaning of the Florida Trade Secrets Act, Fla. Stat. Ann. §§ 688.001 et seq. ("FUTSA").

40.   FAERMAN knew she had a duty to maintain the secrecy of and not to disclose OFRA's trade secrets and confidential information. Importantly, FAERMAN also had a duty to not access the data after the end of her employment with OFRA on July 15, 2020.

41.   OFRA took reasonable steps to keep this information secret. Access to the data FAERMAN misappropriated is tightly controlled by OFRA. Access is provided on a need-to-know basis and access to the Highrise platform is monitored and password-protected.

42.    In violation of the FUTSA, FAERMAN has knowingly and improperly acquired and retained OFRA's confidential and propriety information and trade secrets. Upon information and belief, FAERMAN is improperly using OFRA's trade secret information to benefit herself, her employer and to OFRA's detriment.

43.    FAERMAN was not acting within the scope of her employment with OFRA when she misappropriated these documents because employment with OFRA ended on July 15, 2020.

44.    FAERMAN had no legitimate business reason for accessing any of the data because at the time she did so, she was no longer an employee of OFRA. Indeed, FAERMAN accessed the data for the sole purpose of misappropriating the confidential information contained therein.

45.    FAERMAN's actions constitute actual misappropriation in violation of the FUTSA.

46.    FAERMAN's actions constitute a willful and malicious violation of the FUTSA.

47.    As a result of FAERMAN's conduct, OFRA has suffered and will continue to suffer damages and irreparable harm, including without limitation, diminishing value of OFRA's trade secret and confidential information, harm to OFRA's relationships with its customers by unfairly competing for the same customer base, and undermining OFRA's competitive edge.

48.    OFRA's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief.

49.    FAERMAN will continue to cause irreparable harm and damages to OFRA and its trade secrets and confidential information if not restrained.

### COUNT III
### Violation of the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030, *et seq*.)
### (Injunctive Relief and Damages)

50.    OFRA realleges and incorporates by reference Paragraphs 1 through 17 as though fully set forth herein.

51.     Through the conduct described above, FAERMAN has violated §1030(a)(2)(C) of the Computer Fraud and Abuse Act, 18 U.S.C. §§1030, et seq. ("CFAA"), which states that an individual has violated the CFAA if he or she "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer."

52.     OFRA's proprietary documents and the confidential information contained therein, are accessible through OFRA's computers, including the laptops issued to FAERMAN, computer systems, and computer network, all of which are protected computers within the meaning of 18 U.S.C. §1030(e)(2). OFRA's computers, computer systems, and computer networks access the internet and are used in and affect interstate commerce.

53.     As described above, FAERMAN surreptitiously and unlawfully accessed OFRA's data on the Highrise portal from her home several months after her last day of employment with OFRA.

54.     FAERMAN had no legitimate business reason for accessing the data on the Highrise portal because she was no longer an employee of OFRA. As a result, FAERMAN knowingly and intentionally accessed and, upon information and belief, copied the data from OFRA's protected computers without authorization.

55.     Through his unauthorized access, FAERMAN has wrongfully obtained confidential information and trade secrets from OFRA's protected computers, computer systems, and/or computer networks in violation of 18 U.S.C. §1030(a)(2)(C), including but not limited to confidential information regarding OFRA's current and prospective customers, sales and product strategies and assessments of worldwide geographic markets.

56.     Through her actions, FAERMAN has caused OFRA to suffer loss within the meaning of 18 U.S.C. §1030(e)(11), including but not limited to costs incurred by OFRA to investigate, assess, and address FAERMAN's misconduct.

57.     As a result of FAERMAN's conduct, OFRA has suffered and will continue to suffer damages and irreparable harm, including without limitation, diminishing value of OFRA's trade secrets and confidential information.

58.     OFRA has no adequate remedy at law and is entitled to injunctive relief or other equitable relief, as provided in 18 U.S.C. § 1030(g).

59.     FAERMAN will continue to cause irreparable harm and damages to OFRA and its trade secrets and confidential information if not enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff OFRA COSMETICS, LLC respectfully prays for relief as follows:

1.     That judgment be entered in favor of OFRA and against FAERMAN on all Counts;

2.     That FAERMAN be ordered to comply with the terms of the Employment Agreement;

3.     That FAERMAN be temporarily, preliminarily, and permanently enjoined and restrained from, individually or acting in concert with any other person or entity, directly or indirectly, utilizing, divulging, and/or relying on OFRA's confidential information and/or trade secrets, whether in the course of her current employment or in any other personal or professional capacity;

4.     That FAERMAN be temporarily and preliminarily enjoined from directly or indirectly competing with OFRA for a period of no less than two years from the date of an order from this Order;

5.     That defendant FAERMAN and all those acting in concert with FAERMAN be ordered to return to OFRA the originals and all copies of all electronic and hard copy data and emails containing OFRA's confidential information and/or trade secrets that (a) FAERMAN obtained from OFRA and (b) are in FAERMAN' possession, custody, or control, or in the possession, custody, or control of her lawyers, agents, family members, friends, employer, employees, or any other person or entities acting in concert with her or on her behalf, including but not limited to, any "personal assistant" or other such person(s) who may be assisting or working with FAERMAN either at her current employment or in any other personal or professional capacity;

6.     That FAERMAN be ordered to provide to OFRA for forensic examination, FAERMAN's personal computer(s) and any computers or other electronic devices (e.g., tablets, smartphones, external hard drives, flash or thumb drives and other such storage devices) that ever contained OFRA's confidential information and/or trade secrets;

7.     That FAERMAN be ordered to provide to OFRA for forensic examination, FAERMAN's logins and passwords to all of her online or cloud-based email accounts and document storage accounts (e.g., Gmail, Hotmail, Yahoo, Google drive, iCloud, Azure, Dropbox, Box, LinkedIn, Instagram, Facebook, Glassdoor, etc.) that ever contained OFRA's confidential information and/or trade secrets;

8.     That OFRA be awarded attorneys' fees, costs and disbursements incurred as a result of this action;

9.     That OFRA be awarded damages in an amount to be proved at trial;

10.    That OFRA be awarded punitive damages; and

11.    That OFRA be awarded such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

OFRA demands a trial by jury of all issues so triable.

**WHEREFORE,** plaintiff, OFRA COSMETICS, LLC, respectfully requests the Court enter judgment in its favor and against the defendant AYELET FAERMAN, together with attorney's fees, costs and expenses incurred by plaintiff, and for such other relief as deemed just and proper by this Court.

Dated: January 5, 2021
      Miami, Florida

Respectfully Submitted,

**KEITH D. SILVERSTEIN, P.A**
1111 Brickell Ave., Suite 1550
Miami, Florida 33131
(305) 868-0200
keith@silversteinpa.com
service@silversteinpa.com

By: /s/ Keith D. Silverstein
Keith D. Silverstein, Esq.
Fla. Bar No.: 086820
*Attorney for Plaintiff*